UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11270-RGS
CRIMINAL ACTION NO. 08-10082-RGS

YEIFRIN RAFAEL OZUNA-CABRERA

v.

UNITED STATES OF AMERICA

MEMORANDUM AND ORDER ON PETITIONER'S
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

November 1, 2012

STEARNS, D.J.

Petitioner Yeifrin Rafael Ozuna-Cabrera (Ozuna), a non-citizen accused of illegal reentry and identity fraud, brings this pro se petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Ozuna argues that his lawyers – Federal Defender Stylianus Sinnis and Lisa Aidlin[1] – provided ineffective assistance of counsel by failing to adequately advocate for his participation in the so-called "Fast Track Program."[2] Ozuna argues that had he been found eligible, he would have

---

[1] The district court docket does not show any pleadings signed by Attorney Aidlin.

[2] The "Fast Track Program" was initiated by Attorney General John Ashcroft in 2003 in support of the Prosecutorial Remedies and Other Tools to End Exploitation of Children Today (Protect) Act. It authorizes a downward departure in exchange for a defendant's expedited guilty plea in certain crimes including illegal reentry of the

received up to a four-level reduction in the calculation of his adjusted offense level under the advisory Sentencing Guidelines, which in turn would have led to a significant reduced sentence. Ozuna alleges that his attorneys ignored his repeated requests that they place the issue of his eligibility for a Fast Track disposition before the court. Because the record flatly refutes Ozuna's contention, the petition will be denied.

BACKGROUND

On April 9, 2008, Ozuna was indicted on two counts of making false statements on a United States passport application, one count of aggravated identity theft, and one count of unlawful reentry after deportation. On March 19, 2008, Ozuna applied for a U.S. passport at the State Department's Passport Agency in Boston, Massachusetts, using the infelicitous alias of "Howard Edward Bond." Suspecting chicanery, the Passport Agency's Fraud Prevention Office became involved in the person of Diplomatic Security Service Special Agent Marco Ayub. Agent Ayub quickly unraveled Ozuna's scheme, and on March 20, 2008, Ozuna found himself making an initial appearance before a Magistrate Judge at which he was detained. After the usual discovery and the resolution of several pretrial motions, on March 18, 2009, Ozuna pled guilty to the indictment. While no formal plea agreement was ever entered, the government moved for a two-level decrease in Ozuna's offense level in recognition of

---

United States (8 U.S.C. § 1326).

his willingness to plead guilty. On July 22, 2009, Ozna was sentenced by this court to concurrent terms of forty-six months on Counts 1, 2, and 4 of the Indictment, and a consecutive term of twenty-four months on Count 3. Ozuna's appeal of his conviction was rejected by the Court of Appeals on November 3, 2011. The Supreme Court in turn denied certiorari and this petition followed.

## STANDARD OF REVIEW

Section 2255 is not a substitute for direct appeal, but rather allows post-conviction relief in four limited instances: "[I]f the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). "The catch-all fourth category includes only assignments of error that reveal 'fundamental defect[s]' which, if uncorrected, will 'result[] in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" *Id.,* quoting *Hill v. United States*, 368 U.S. 424, 428 (1962). A petitioner bears the burden of demonstrating an entitlement to relief under § 2255. *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980).

Ozuna's petition hinges on the Sixth Amendment's guarantee of the right to the effective assistance of counsel in criminal cases. *See Strickland v. Washington*, 466

3

U.S. 668, 686 (1984). The threshold for a showing of a material deficiency in the representation of counsel is set deliberately high. A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). A two-pronged testis applied in evaluating a claim of attorney impotency.

> First, a reviewing court must assess the proficiency of counsel's performance under prevailing professional norms . . . . This evaluation demands a fairly tolerant approach; after all, the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense . . . . The second line of inquiry . . . entails a showing of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994) (internal quotation signals omitted). To satisfy the two prongs of the test, Ozuna must demonstrate that the decision not to argue for a Fast Track disposition was made for no good reason, and that had it been made, it would likely have prevailed in the form of a more lenient sentence. *See United States v. Montero-Diaz*, 173 F. App'x 7, 10 (1st Cir. 2006) ("Defense counsel argued at sentencing . . . on the basis of various personal circumstances of the defendant, including no history of violent offenses, and the fact that his last conviction was over ten years old . . . [T]he argument that defense counsel was ineffective for failing to also

4

request a downward departure on 'fast track' grounds is without merit."); *Pimental v. United States*, 2010 WL 98950, at *6 (D. Mass. Jan. 8, 2010) (the second prong of the *Strickland* test was not satisfied where there was no reasonable probability that a Fast Track argument would have influenced petitioner's sentence).

DISCUSSION

The Fast Track program is an outgrowth of the 2003 PROTECT Act and Congress's concomitant desire to expedite the disposition of cases involving criminal aliens. In such cases, section 401(m)(2)(B) of the Act directed the Attorney General to issue "a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." In implementing Fast Track, the Attorney General took a narrow needs-based approach, decreeing that the program was "intended to be exceptional and . . . [was] authorized only when clearly warranted by local conditions within a district." Memorandum of John Ashcroft, Attorney General to All Federal Prosecutors (Sept. 22, 2003) (http://www.justice.gov/opa/pr/2003/September/03_ag_516.htm).

A decade later, the Attorney General's office reviewed the Program and lifted the territorial limitations on Fast Track eligibility. *See* Memorandum of James M. Cole, Deputy Attorney General, to Federal Prosecutors (January 31, 2012)

(http://www.justice.gov/dag/fast-track-program.pdf). The memorandum made clear, however, that the broader eligibility did not signal the bestowment of any entitlement, nor the creation of any new litigable rights. "[I]t [the Memorandum] . . . may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party." *Id*. The recommendation of a Fast Track departure remained solely a matter for the local U.S. Attorney's discretion. In *United States v. Melendez-Torres*, the Court of Appeals for the First Circuit, in reviewing a challenge to the discretion conferred by General Ashcroft (and confirmed by General Holder), concluded that, "we could find no Constitutional mandate that all U.S. Attorneys . . . offer [Fast Track] to all defendants, particularly since Melendez does not allege that the Government had an impermissible motive in deciding not to implement the program." *Melendez-Torres*, 420 F. 3d 45, 53 n.5 (1st Cir. 2005). To the extent that Ozuna seeks to revisit this issue, he is precluded from doing so by circuit precedent.

Ozuna's ineffective assistance of counsel claim fares no better as it fails both prongs of the *Strickland* standard. Ozuna objects to his counsel's failure to "challenge the government's partial benefit for the 'Fast-Track' program." Pet'r's Br. at 5, *United States v. Ozuna-Cabrera*, No. 08-10082 (1st Cir. July 3, 2012). The objection is belied by the record. Attorney Sinnis advocated vigorously beginning with the filing of his sentencing brief for the grant of "a four-level reduction because of the national disparity

6

between the treatment of some illegal re-entry cases and those in the District of Massachusetts." Def.'s Sentencing Br. at 20. In total, Sinnis devoted two-and-a-half pages of the brief to a discussion of the equities of the Fast Track Program. *Id*. at 18-20. Although Sinnis did not press the issue during his argument, there was no need to as the government prosecutor broached the subject of a Fast Track disposition as his first topic as a prelude to a lengthy discussion of the partial concession to which the government was willing to agree. *Id*. at 3-7, 16. If the argument is that Sinnis should have pursued the subject further at the hearing, the case illustrates a common strategic choice made by counsel that might be described as the "dead horse principle," that is, the recognition that there comes a point at which the unremitting pursuit of a non-resuscitable argument is likely to do more harm than good.[3] So it is here. There was nothing more to be said that hadn't been said already.[4]

ORDER

---

[3] At the end of the day, it is the judge and not the prosecutor who must be persuaded of the equities of a Fast Track departure. *See United States v. Rodriguez*, 527 F. 3d 221, 231 (1st Cir. 2008) ("[A]lthough sentencing courts can consider items such as fast-track disparity, they are not obligated to deviate from the guidelines based on those items.").

[4] It is worth noting that Ozuna failed to meet at least three of the nine criteria established by the Attorney General for Fast Track Program eligibility, most significantly his failure to agree to plead guilty within 30 days of his arraignment. Ozuna was arraigned on April 17, 2008, but did not indicate his intention to plead guilty until March 6, 2009 – nearly a year later.

For the foregoing reasons, the motion to vacate, set aside, or correct sentence is <u>DENIED</u>. The Clerk will enter judgment accordingly and close the case. Ozuna is hereby advised that an application for a certificate of appealability must be filed with this court within twenty-one (21) days of the date of this Order or the issuance of a certificate of appealability will be deemed <u>DENIED</u>.

        SO ORDERED.

        /s/ Richard G. Stearns
        _____
        UNITED STATES DISTRICT JUDGE